

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-279-CV

GARRY JENKINS                                                    APPELLANT

V.

STATE AND COUNTY MUTUAL FIRE                                     APPELLEE
INSURANCE COMPANY

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

This is a suit by a judgment creditor to collect a default judgment under an automobile liability policy. It is undisputed that the additional insured against whom the default judgment was rendered failed to notify the insurer of the lawsuit filed against him. It is further undisputed that the insurer had actual knowledge of the suit. The question is whether the insurer is liable for the

default judgment rendered against the additional insured. We answer "no" and affirm the trial court's grant of summary judgment in favor of the insurer.

**Background**

Except as noted below, the facts of this case are undisputed. Appellant Garry Jenkins's foot was crushed in 1997 when a tank skid fell off a truck driven by Mark Lemmon. The accident happened when Mark allegedly applied the brakes of the truck too quickly, causing the skid to break free and fall on Garry's foot. Both Garry and Mark were working as independent contractors for L & G Pipe, which was owned by Deborah Grisamer and Richard Lemmon; Richard is Mark's brother. The parties dispute who owned the truck Mark was driving.

At the time of the accident, Appellee State and County Mutual Fire Insurance Company had issued a business auto policy to Deborah as named insured, and the policy was in effect on the day of the accident. The policy listed the truck as a "covered auto." The policy's "loss conditions" provide as follows:

> 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
>
> . . . .
>
> b. . . . you and any other involved insured must . . . [i]mmediately send us copies of any demand, notice,

2

summons or legal paper received concerning the claim or suit [and] [c]ooperate with us in the investigation, settlement or defense of the claim or suit.

3.    LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Form until:

a.    There has been full compliance with all the terms of this Coverage Form; and

b.    Under Liability Coverage, we agree in writing that the insured has an obligation to pay or until the amount of that obligation has been finally determined by judgment after trial.

Mark was listed as a "driver" on a policy renewal application Debra executed before the accident.[1] The truck he was driving at the time of the accident was listed on the policy as a "covered auto."

Garry sued Mark, Deborah, Richard, and L & G Pipe for negligence. Garry obtained service on Deborah, Richard, and L & G Pipe. Those defendants forwarded the suit papers to State and County, and State and County defended them under the policy.

---

[1] Garry repeatedly refers to Mark as a "named insured" in his brief, but he never identifies where in the policy Mark is so named. Our own review of the relevant documents finds Mark's name only on the renewal application, not in the policy itself. The policy's declaration page lists only Deborah as a "named insured."

When Garry was unable to effect personal service of process on Mark, he obtained an order authorizing service on Mark by publication. Mark did not file an answer. Garry's counsel informed State and County's adjuster that Mark had been served by publication and sent him copies of the suit papers. State and County's counsel denied that Mark was entitled to coverage under the policy and asserted that even if Mark was covered, he had failed to comply with the policy's notice-of-suit condition. The trial court later rendered a default judgment against Mark for $650,000 in actual damages and $260,000 in prejudgment interest.[2]

The suit proceeded to trial against the remaining defendants. A jury found that Mark was 100% at fault for the accident, and the trial court rendered a take-nothing judgment against the other defendants.

Garry then sued State and County, seeking to collect the judgment he had obtained against Mark. The trial court granted summary judgment for State and County on the theory that Mark was not insured under L & G Pipe's business auto policy because Mark, not Deborah, owned the truck. *See Jenkins v. State & County Mut. Fire Ins. Co.*, No. 02-06-00067-CV, 2007 WL 1168470, at *1

---

[2] The trial court did not appoint an attorney ad litem to defend the suit on Mark's behalf as required by rule of civil procedure 244 in cases where the defendant is served by publication. *See* Tex. R. Civ. P. 244.

(Tex. App.—Fort Worth Apr. 19, 2007, pet. denied) (mem. op.) ("*Jenkins I*").

We reversed and remanded, holding that a genuine issue of material fact as to who owned the truck precluded summary judgment. *Id.* at *3.

On remand, Garry filed a traditional motion for summary judgment, arguing that Mark was a covered driver under the policy. State and County filed a combined traditional and no-evidence motion for summary judgment, arguing that it had no duty to indemnify Mark or pay the judgment on his behalf because Mark had not notified State and County of the suit against him. Garry argued that State and County had waived Mark's compliance with the policy's notice-of-suit condition because it had actual knowledge of Garry's suit against Mark but refused to defend him. The trial court granted State and County's summary judgment motion and denied Garry's. Garry filed this appeal.

**Standard of Review**

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should

5

review both parties' summary judgment evidence and determine all questions presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The reviewing court should render the judgment that the trial court should have rendered. *Id*.

When a party moves for summary judgment on both traditional and no evidence grounds and the trial court did not specify the grounds on which it was granted, we will uphold the summary judgment if any one of the grounds advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

**Discussion**

**1.    Mark's failure to forward suit papers and demand a defense**

In his second issue, Garry argues that the trial court erred by granting State and County's traditional motion for summary judgment. State and County contends that Mark's failure to comply with the notice-of-suit condition precludes coverage for Garry's claims against Mark. Garry argues that State and County cannot rely on the condition because it had actual knowledge of his suit against Mark. For the purposes of this discussion, we will assume without deciding that Mark was an insured under the policy at the time of the accident.

Our supreme court has consistently held that an insurer has no duty to defend or indemnify an insured unless the insured forwards suit papers and

6

requests a defense in compliance with the policy's notice-of-suit conditions. *See Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 610 (Tex. 2008); *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 174–75 (Tex. 1995); *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex. 1978).

*Weaver* is the first of three supreme court decisions that guide our analysis. Weaver was involved in a car wreck with Busch, who worked for Thomas Enterprises. 570 S.W.2d at 368. Thomas was the named insured on a comprehensive automobile liability policy issued by Hartford. *Id.* Weaver sued and served Busch, but Busch did not forward the suit papers to Hartford. *Id.* Weaver sued and served Thomas in the same action; Thomas promptly forwarded the suit papers to Hartford, and Hartford defended Thomas. *Id.* Weaver later nonsuited Thomas, and the trial court rendered a default judgment against Busch. *Id.* Weaver then sued Hartford to collect the judgment. *Id.*

The supreme court noted that a policy's condition that the insured immediately forward suit papers to the insurer serves several purposes. *Id.* at 369. One purpose is to enable the insurer to control the litigation and interpose a defense. *Id.* But "a more basic purpose is to advise the insurer that the insured has been served with process and that the insurer is expected to timely file an answer." *Id.* The court held that because Busch had never forwarded

7

the suit papers to Hartford or requested a defense, Hartford had no duty to defend him, and it affirmed the court of appeals' take-nothing judgment in favor of Hartford. *Id.* at 370.

Seventeen years later, the supreme court reached a similar result in *Harwell*. Hubbard and Leatherman were in a car wreck; Hubbard died, and Leatherman was seriously injured. 896 S.W.2d at 172. Hubbard was insured by a State Farm automobile liability policy. *Id.* Leatherman sued Hubbard's estate. Leatherman's attorney caused the probate court to appoint the attorney's secretary, Harwell, as the estate's temporary administrator and served her with citation. *Id.* Leatherman's attorney notified State Farm of the suit in writing and discussed the case with State Farm's attorney, but Harwell never forwarded any suit papers to State Farm nor demanded a defense. *Id.* The trial court rendered a default judgment in favor of Leatherman. *Id.* Harwell did not notify State Farm of the judgment, but Leatherman's attorney sent State Farm a copy of the judgment one day after the deadline for filing a motion for new trial or perfecting appeal. *Id.* When Leatherman attempted to enforce the judgment against Hubbard's policy, State Farm filed a declaratory judgment action against Harwell and Leatherman, seeking a declaration that it was not responsible for the judgment against Hubbard. *Id.* at 173. The trial court

8

granted State Farm's motion for summary judgment, and the court of appeals affirmed. *Id.*

On appeal to the supreme court, Harwell argued that State Farm could not rely on her failure to forward suit papers because it had actual knowledge of Leatherman's suit against Hubbard; that State Farm was not prejudiced by her failure to provide notice; and that State Farm's refusal to defend the suit estopped it from claiming that Harwell's breach of the notice-of-suit provision relieved it of liability. *Id.* The supreme court held that until State Farm received notice of suit, it had no duty to undertake Hubbard's defense. *Id.* at 174. Leatherman's attorney's correspondence to State Farm and his discussions with State Farm's attorney did not constitute "notice." *Id*. Further, "it was Harwell's duty to notify State Farm of the suit against its insured when she received service of process; it was not State Farm's duty to determine when or if Harwell had been served." *Id.* The court also held that "[t]he failure to notify an insurer of a default judgment against its insured until after the judgment has become final and nonappealable prejudices the insurer as a matter of law." *Id.* Finally, noting that estoppel can only arise when a party refuses to do that which he has a duty to do, the court held that State Farm was not estopped from asserting Harwell's breach of the policy as a bar to its liability because State Farm was never under a duty to defend Harwell. *Id.* at 175.

9

The third and final controlling case is *Crocker*. 246 S.W.3d at 603. There, a nursing home resident—Crocker—sued the home's owner—Emeritus—and its employee—Morris—for injuries Crocker sustained when she was hit by a door swung open by Morris. *Id.* at 604. Crocker's claims against Emeritus and Morris were covered by a commercial general liability policy issued by National Union; Emeritus was the named insured, and Morris was an additional insured. *Id.* at 605. Morris was served with process, but he did not forward the suit papers to National Union or request a defense. *Id.* National Union defended Emeritus, but it did not defend Morris even though it knew he was an additional insured and a named defendant who had been served. *Id.* The trial court eventually rendered a $1 million default judgment against Morris. *Id.*

Crocker sued National Union to collect the judgment, and National Union removed the case to federal court. *Id.* The federal district court granted summary judgment in favor of Crocker and awarded her $1 million. *Id.* at 606. On appeal, the fifth circuit certified the following question to the supreme court:

> Where an additional insured does not and cannot be presumed to know of coverage under an insurer's liability policy, does an insurer that has knowledge that a suit implicating policy coverage has been filed against its insured have a duty to inform the additional insured of the available coverage?

10

*Id.* The supreme court answered "no," noting that its decision in *Weaver* governed the case: "Put simply, there is no duty to provide a defense absent a request for coverage." *Id*. at 606, 608.

The court explained that notice and delivery-of-suit-papers provisions in insurance policies serve two essential purposes: (1) they facilitate a timely and effective defense of a the claim against the insured and, more fundamentally, (2) they trigger the insurer's duty to defend by notifying the insurer that a defense is expected. *Id.* at 608 (citing *Harwell*, 896 S.W.2d at 172*; Weaver*, 570 S.W.2d at 369). Mere awareness of a claim or suit does not impose a duty on the insurer to defend under the policy; there is no unilateral duty to act unless and until the additional insured first requests a defense — a threshold duty that the insured fulfills under the policy by notifying the insurer that the insured has been served with process and the insurer is expected to answer on its behalf. *Id.* An insurer cannot necessarily assume that an additional insured who has been served but has not given notice to the insurer is looking to the insurer to provide a defense. *Id.* at 609. If there is no duty to defend, there is no duty to indemnify: "Absent a threshold duty to defend, there can be no liability to [the additional insured], or to [the claimant] derivatively." *Id.* at 609.

The rule from *Weaver*, *Harwell*, and *Crocker* is clear: an insurer has no duty to defend and no liability under a policy unless and until the insured in

11

question complies with the notice-of-suit conditions and demands a defense. This is true even when the insurer knows that the insured has been sued and served and when the insurer actually defends other insureds in the same litigation, as happened in both *Weaver* and *Crocker*.

In the case before us, State and County knew that Garry had sued Mark and knew that Mark had been served by publication. But unless and until Mark notified State and County of the suit and forwarded the suit papers in accordance with the policy's conditions, State and County had no duty to defend Mark and has no liability under the policy for the judgment against Mark.

Garry's attempts to distinguish *Crocker*, *Weaver*, and *Harwell* are unavailing. Garry relies on a single sentence in *Weaver*—"The question presented here is not controlled by the Court's holding in *Employers Casualty Co. v. Glens Falls Insurance Co.*"—and argues that *Employers Casualty* does control the case before us. In *Employers Casualty*, the supreme court held that when a named insured notified the insurer of a covered *accident*, the omnibus insured was not also required to notify the insurer of the accident. 484 S.W.2d 570, 576 (Tex. 1972). The word "accident" is the key. *Employers Casualty* dealt with a condition requiring insureds to notify the insurer of an *accident*, not the condition requiring insureds to notify the insurer of a *lawsuit* and forward

12

suit papers. For that reason, *Employers Casualty* did not control the outcome in *Weaver*, and it does not control the outcome in this case.

Garry attempts to distinguish *Harwell* because in that case, State Farm "did not learn about the suit, service[,] and default judgment until *after* it was final." This is a genuine distinction between our case and *Harwell*, but it does not compel a different outcome. In both *Weaver* and *Crocker*, the insurers knew about the suits, the service on the insureds, and the default judgments *before* the judgments were final—yet the results in those cases were the same as in *Harwell*. Indeed, *Crocker* specifically rejected the argument Garry makes: "Mere awareness of a claim or suit does not impose a duty on the insurer to defend under the policy." *Crocker*, 246 S.W.3d at 608. Thus, while Garry has identified a distinction between this case and *Harwell*, it is a distinction without a difference.

Next, Garry repeatedly identifies Mark as a "named insured"—though, as we have noted, this contention has no support in the record—in an apparent effort to distinguish this case from *Weaver*, *Harwell*, and *Crocker*, all of which concerned omnibus or additional insureds. Even assuming Mark was a named insured, the result would be the same. In *Crocker*, the supreme court held that even an additional insured who does not know he is an additional insured and has no knowledge of the policy's terms and conditions is not entitled to

13

coverage until he requests a defense. *Id.* at 605, 610. If an additional insured who has no knowledge of the policy must comply with its conditions in order to invoke coverage, then certainly compliance will be required of a named insured, who is assumed to have read the policy and is charged by law with knowledge of its contents. *See Roland v. Transamerica Life Ins. Co.*, 570 F. Supp. 2d 871, 880 (N.D. Tex. 2008) ("In Texas an insured has a duty to read the insurance policy and is charged with knowledge of its provisions.").

## 2. Prejudice

Finally, Garry argues that State and County cannot show that it was prejudiced by Mark's failure to notify it of Garry's suit because it had actual knowledge of the suit.[3] An insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay. *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 636–37 (Tex. 2008); *see also Prodigy Commc'ns. Corp. v. Agric. Excess & Surplus Ins. Co.*, No. 06-0598, 2009 WL 795530, at *7 (Tex. Mar. 27, 2009) (extending rule to claims-made policy where prompt-notice condition was not an essential part of the bargained-for exchange under the policy).

---

[3] State and County did not directly address prejudice in its motion for summary judgment in the trial court or in its brief in this court. Garry's appellate argument regarding prejudice consists of a single sentence.

14

An insurer's actual knowledge of a claim or suit does not preclude a showing of prejudice as a matter of law. In *Liberty Mutual Insurance Co. v. Cruz*, the supreme court held that "failure to comply with the insurance policy notice provision by not providing notice of suit until after a default judgment is final, *when the insurer does not otherwise have actual knowledge of the suit*, prejudices the insurer as a matter of law and relieves the insurer of liability under the policy." 883 S.W.2d 164, 165 (Tex. 1993) (emphasis added); *see also Harwell*, 896 S.W.2d at 174 (holding Harwell's failure to notify State Farm of the suit against Hubbard's estate prejudiced State Farm as a matter of law). But in *Crocker*—without mentioning *Cruz*—the supreme court indicated that even if an insurer has actual knowledge of a suit against its insured, the insurer is not precluded from showing prejudice as a matter of law: "The question . . . is . . . whether National Union . . . should be estopped to deny coverage because it was aware that Morris had been sued and served and had ample time to defend him. The answer must be 'no.'" 246 S.W.3d at 609; *see also Md. Cas. Co. v. Am. Home Assur. Co.*, 277 S.W.3d 107, 117 n.19 (Tex. App.—Houston [1st Dist.] 2009, pet. filed) (recognizing *Crocker's* implicit overruling of the "actual knowledge of suit" language in *Cruz*). Thus, under *Crocker*, the fact that State and Country had actual knowledge of Garry's suit against Mark does not preclude proof of prejudice as a matter of law.

15

The question, then, is whether State and County proved prejudice as a matter of law. For the answer, we turn again to *Crocker*. The supreme court distinguished between *late* notice, as in *PAJ*, and *no* notice, as in *Crocker* and the case before us: "In the pending case, however, the additional insured's notice was not merely late; it was wholly lacking. PAJ's notice was tardy; Morris's was nonexistent." *Crocker*, 246 S.W.3d at 609. The court further stated that National Union was "obviously prejudiced in the sense that it was exposed to a $1 million judgment." *Id.* After receiving the supreme court's answers to its certified questions, the fifth circuit reversed and remanded with instructions to render a take-nothing judgment in favor of National Union, holding,

> It is clear from the opinion of the Texas Supreme Court that, because Morris never gave National Union any notice of the suit, never complied with the National Union policy's relevant notice provisions, never furnished it copies of any relevant papers as required by the policy, and never in any manner requested a defense from National Union, that National Union owed no duty to defend Morris, or to sua sponte notify him that its policy covered him, and was entitled to rely on its policy provisions precluding coverage on the basis of such noncompliance.

*Crocker v. Nat'l Union Fire Ins. Co.*, 526 F.3d 240, 241 (5th Cir. 2008) (per curiam).

In the pending case, as in *Crocker*, Mark's notice is not merely late; it is wholly lacking. Just as National Union's actual knowledge of the suit against

16

Morris did not preclude proof of prejudice, State and County's actual knowledge of the suit against Mark does not preclude proof of prejudice. And just as National Union was "obviously" prejudiced by the rendition of a $1 million judgment against Morris, State and County was prejudiced by the $650,000 judgment rendered against Mark. We hold that Mark's failure to comply with the policy's notice-of-suit provision prejudiced State and County as a matter of law.

Because Mark never gave State and County any notice of the suit, never complied with the State and County's policy's relevant notice provisions, never furnished it copies of any relevant papers as required by the policy, and never in any manner requested a defense from State and County, State and County owed no duty to defend Mark, was prejudiced by the default judgment Garry took against Mark, and was entitled to rely on its policy provisions precluding coverage on the basis of such noncompliance. We therefore hold that the trial court did not err by granting a traditional summary judgment in State and County's favor, and we overrule Garry's second issue.

## Conclusion

Having overruled Garry's second issue, we do not reach his first issue, in which he argues that the trial court erred by denying his own motion for summary judgment, nor his third issue, in which he argues that the trial court

17

erred by granting State and County's no-evidence motion.  *See* Tex. R. App. P. 47.1.  We affirm the trial court's judgment.

ANNE GARDNER<br>JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DELIVERED:  June 11, 2009