333 S.W.3d 241 (2010)
Shawn HUDSON, Appellant,
v.
CITY OF HOUSTON, Appellee.
No. 01-07-00939-CV.
Court of Appeals of Texas, Houston (1st Dist.).
August 12, 2010.
Rehearing Overruled October 11, 2010.
*243 Arturo G. Michel, The City of Houston Legal, Leslie M. Henry, Ruth E. Filler, Hays, McConn, Rice & Pickering, William M. Funk, Houston, TX, for Appehant.
Jaqueline Leguizamon, City of Houston Legal Dept., Houston, TX, for City of Houston.
Panel consists of Justices JENNINGS, HIGLEY, and SHARP.

OPINION
LAURA CARTER HIGLEY, Justice.
In this appeal, plaintiff/appellant, Shawn Hudson, challenges the trial court's order granting defendan/appellee, the City of Houston's, motion for summary judgment and denying Hudson's motion for partial summary judgment. At issue in this case is whether the City breached a duty to its employee, Gilda Green, to defend and to indemnify Green in an earlier tort suit brought by Hudson against Green. Hudson alleges that she received an assignment of rights from Green to bring this Stowers and indemnity action against the City, which is self-insured. On appeal, Hudson raises eight issues challenging the trial court's summary judgment rulings.
We affirm.

*244 Factual & Procedural Background
On May 3, 2000, Shawn Hudson's two-year-old son, Taylor Hudson, was struck and killed by a garbage truck driven by City of Houston employee, Gilda Green. Hudson, Taylor's father, James McPeters, and the Estate of Taylor Hudson ("the plaintiffs") filed suit against Green and the City. The City of Houston answered the lawsuit, but Green did not. On January 30, 2001, the trial court signed an order granting the plaintiffs' motion for default judgment against Green. The order also set a date for an evidentiary hearing on damages.
A docket sheet entry indicates that on May 7, 2001 "a damages hearing after default of [defendant] Ms. Green" was conducted. The docket sheet notes, "testimony taken" and "award damages of $1M to [plaintiff father]" and "$2.5M to [plaintiff] mother and estate."
On July 11, 2001, the plaintiffs' attorney sent the City a letter in which it offered to settle its claims against Green. In the settlement offer, plaintiffs represented that they had obtained a judgment against Green totaling $3.5 million. The plaintiffs stated that they would settle their claims against Green for $200,000. The plaintiffs informed the City, "If you do not agree to this amount we intend to enforce the entire judgment against Defendant Green and under the `Stowers Doctrine' [and] you as the indemnity obligor may be liable for three times the total damages accessed against Ms. Green." The City did not respond to the settlement offer.
The plaintiffs later nonsuited their claims against the City.
Hudson, McPeters, and Taylor's Estate filed a second suit against the City claiming that, as her employer, the City was liable for Green's negligence. The City responded, in part, by pointing out that Taylor had been in the care of his father, McPeters, at the time of his death and asserted that Taylor's death was caused by McPeter's negligence.
The trial court rendered partial summary judgment against the City on the issue of liability. In a pretrial conference, it was agreed that Green's negligence should be imputed to the City and that the only issue to be tried to the jury would be damages.
In addition to a damages question, the trial court submitted a comparative responsibility question to the jury asking it to apportion the negligence causing Taylor's injury between Green and McPeters. The jury apportioned twenty-five percent responsibility to Green and seventy-five percent to McPeters. As a result, McPeters was awarded no damages.
The jury awarded $150,000 to Hudson and $30,000 to Taylor's Estate. In its judgment, the trial court reduced the damages awarded to Hudson and to the Estate by the percentage of McPeters's negligence. Hudson and the Estate appealed the reduction in damages. The Fourteenth Court of Appeals held that the trial court erred by reducing Hudson's and the Estate's damage award by the percentage of McPeters's negligence. The court of appeals remanded the case to the trial court for a proper award of damages.[1] On remand, the trial court signed a judgment awarding damages to Hudson and to the Estate against the City in accordance with the jury's award.
The instant case is the third suit brought by Hudson against the City. Unlike her previous two suits against the City, here, Hudson sues the City as the *245 assignee of Green. As assignee, Hudson asserts claims belonging to Green against Green's employer, the City of Houston.
In her petition, Hudson alleged that she is "suing by assignment . . . for the enforcement of the rights of Ms. Gilda Faye Green" against the City. Hudson asserted that Green "ran over and killed" Taylor "while acting within the course and scope of her employment" with the City. Hudson alleged that a $3.5 million "final judgment was entered against Ms. Green" in favor of Hudson and McPeters in the first suit.[2] Hudson asserted that, as an employee of the City, Green was "Insured by [the City] and indemnified with coverage up to $100,000 per claimant." Hudson pointed out that "an offer was made by the plaintiffs to settle the claims against [Green] for $100,000 per claimant as provided within the indemnity provisions of the insurance agreement." She averred that, as a result of the City's "rejection" of the settlement offer, Green is "subject to an outstanding judgment in the amount of $3,500,000 plus prejudgment and post-judgment interest." Hudson claimed that the City "was the sole indemnitor of Ms. Green and as such owed a duty to indemnify her for losses up to an amount of $100,000 per claimant."
Based on these factual allegations, Hudson asserted a Stowers negligence claim against the City.[3] In support of this claim, Hudson alleged that the City "had a duty to settle reasonable offers within the limits of the policy." Hudson further averred, that "[a]s a result of [the City's] breach of the duty, Ms. Green was subjected to a personal judgment in excess of $4,000,000."
Hudson also brought an indemnity claim against the City. She contended that the City had a duty to indemnify Green and has failed to fulfill that duty.
In addition, Hudson also asserted a claim under former Insurance Code article 21.21.[4] Hudson contends that the City violated the Insurance Code by "fail[ing] to effectuate a prompt fair and equitable settlement once the liability to the Plaintiffs became reasonably clear."
In its answer, the City indicated that Hudson's claims arise from the City's performance of a "governmental function." Concomitantly, the City asserted that Hudson's claims were barred by the doctrine of governmental immunity. The City averred that no waiver of governmental immunity applied to Hudson's claims.
Hudson filed a motion for partial summary judgment in which she asserted that she was entitled to summary judgment on each of her causes of action as a matter of law. Hudson also addressed the defenses raised by the City, including the City's claim of governmental immunity. In her motion, Hudson maintained that governmental immunity does not apply to her claims because it is undisputed that "the City is an admitted self-insurer." Hudson asserted that her liability and indemnification claims against the City arise, in part, from the City's status as a "self-insurer." Hudson contended that, because the act of self-insuring is a "proprietary" function, not a governmental one, the City is not entitled to governmental immunity. *246 Hudson pointed to sections 2-302 through 2-305 of the Houston Code of Ordinances as a basis for her "insurance coverage and indemnification" claims. More precisely, Hudson pointed to section 2-303(a), which provides, "The city shall, subject to the exclusions described below, provide legal representation to a covered person for any claim or lawsuit brought against the covered person alleging acts or omissions by the covered person during the course and scope of their assigned duties with the city."[5]
Hudson also relied on the language of section 2-304, which is entitled "Indemnification." The ordinance provides, in part, "The city shall, subject to the exclusions and other provisions of this section, pay judgments, attorney's fees and costs assessed against a covered person in a lawsuit for which the city has an obligation to provide legal representation under section 2-303, above."
The City responded to Hudson's motion for partial summary judgment and filed its own motion for summary judgment. The City asserted that the activity from which Hudson's claims arise is a governmental function and not a proprietary one. The City reiterated that it is entitled to governmental immunity and that Hudson has not demonstrated a waiver of that immunity.
The City also asserted that it was entitled to summary judgment because Green had not given the City notice of the first lawsuit or requested a defense or indemnity, as required by section 2-305.
Hudson filed no response to the City's motion for summary judgment. Ultimately, the trial court granted the City's motion and denied that of Hudson.
The trial court filed "conclusions of law" in support of its rulings on the respective motions for summary judgment.[6] Among its conclusions of law supporting summary judgment in the City's favor, the trial court determined that "Plaintiff's claims [sic] are not a proprietary function" and that the City was not provided with proper notice of the underlying claims.
Raising eight issues, Hudson appeals the trial court's judgment granting the City's motion for summary judgment and denying her motion for partial summary judgment.

Summary Judgment Standard
To prevail on a "traditional" Rule 166a(c) summary-judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. See TEX.R. CIV. P. 166a(c); Little v. Texas Dep't of Criminal Justice, 148 S.W.3d 374, 381 (Tex.2004). A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. See Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.1999).
A defendant may prevail by traditional summary judgment if it conclusively negates at least one essential element of a *247 plaintiff's cause of action. See IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason, 143 S.W.3d 794, 798 (Tex.2003). A movant seeking traditional summary judgment on an affirmative defense has the initial burden of establishing entitlement to judgment as a matter of law by conclusively establishing each element of his affirmative defense. See Chau v. Riddle, 254 S.W.3d 453, 455 (Tex.2008); see also TEX.R. CIV.P. 166a(b)-(c). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. See City of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005).
If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex.2007).
On appeal, we review de novo a trial court's summary judgment ruling. See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009). In our review, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. See Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex.2006).
When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment proof presented by both sides and determine all questions presented. See CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co., 177 S.W.3d 425, 430 (Tex.App.-Houston [1st Dist] 2005, pet. denied). We consider all grounds on which the trial court ruled that are preserved for review and that are necessary for disposition of the appeal. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex.1996). We may consider other preserved grounds in the interest of judicial economy. See id. We must affirm the summary judgment if any one of the grounds presented to the trial court is meritorious. See Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex.2003).

Proprietary vs. Governmental Function
Hudson sued the City because it did not defend or indemnify Green in relation to the initial tort suit ("the tort suit"). In her first issue, Hudson challenges the trial court's summary judgment rulings by asserting that the City's act of providing liability coverage to its employees, through a self-insurance fund, for claims arising from acts or omissions by the city employee, during the course and scope of her assigned job duties, is properly classified as a proprietary function, not a governmental one. Hudson correctly points out that classifying the City's conduct as either proprietary or governmental is the threshold inquiry underpinning the City's right to governmental immunity and to summary judgment in this case.[7]See City of *248 Houston v. Petroleum Traders Corp., 261 S.W.3d 350, 355 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (explaining that determining a municipality's amenability to suit is a two-step inquiry with the first inquiry being whether the function is governmental or proprietary and the second being whether immunity has been waived by statute):
Governmental immunity protects a city from lawsuits for money damages, unless the legislature expressly consented to the suit. See City of El Paso v. Heinrich, 284 S.W.3d 366, 369-70 (Tex.2009); Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.1999). Governmental immunity applies only to a city's governmental functions. See Tooke v. City of Mexia, 197 S.W.3d 325, 343 (Tex.2006); Temple v. City of Houston, 189 S.W.3d 816, 819 (Tex. App.-Houston [1st Dist.] 2006, no pet.). Accordingly, a municipality engaged in a function defined by the legislature as governmental is entitled to governmental immunity absent a legislative waiver of immunity. McDonald v. City of the Colony, No. 2-08-263-CV, 2009 WL 1815648, at *4 (Tex.App.-Fort Worth June 25, 2009, no pet.) (mem. op.).
In contrast, governmental immunity does not protect a city from suit when the claim arises from the performance of a proprietary function. See Dilley v. City of Houston, 148 Tex. 191, 222 S.W.2d 992, 993 (1949); see also Tooke, 197 S.W.3d at 343. As a result, a city is liable to the same extent as a private party if it is negligent while engaged in the performance of a proprietary function. Gates v. City of Dallas, 704 S.W.2d 737, 739 (Tex. 1986); Martinez v. City of San Antonio, 220 S.W.3d 10, 14 (Tex.App.-San Antonio 2006, no pet.).
The Texas Constitution authorizes the Texas Legislature to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, . . . ." TEX. CONST. art. XI, § 13; see Tooke, 197 S.W.3d at 343. Civil Practice and Remedies Code section 101.0215 provides a nonexclusive list of 39 municipal functions, classifying each function as either governmental or proprietary. See TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215 (Vernon 2005).
The activity at issue hereproviding a defense and indemnity to a city employee through self-insuranceis not among those functions listed in section 101.0215. See id. The City contends that another statute, found in Government Code Chapter 2259, indicates that a municipality's act of defending and indemnifying its employees in lawsuits, through a self-insurance fund, is a governmental function.
The City specifically cites Government Code section 2259.031, which provides, "A governmental unit [which includes a municipality] may establish a self-insurance fund to protect the governmental unit and its officers, employees, and agents from any insurable risk or hazard." TEX. GOV'T CODE ANN. § 2259.031(a) (Vernon 2008); see also TEX. GOV'T CODE ANN. § 2259.001(1) (Vernon 2008) (defining "[g]overnmental unit"). That section further permits the governmental unit (1) to issue public securities and use the proceeds for all or part of the fund or (2) to use any money available to the governmental unit for the fund. *249 TEX. GOV'T CODE ANN. § 2259.031(b) (Vernon 2008).
The City also points to section 2259.032, which provides, "The issuance of a public security or the use of available money for a self-insurance fund under this subchapter is a public purpose of the governmental unit." TEX. GOV'T CODE ANN. § 2259.032 (Vernon 2008) (emphasis added). The City contends that this language indicates that the Texas Legislature intended the act of self-insuring to be classified as a governmental function.
Although the City's argument initially appears compelling, the act underlying Hudson's claim is not the City's funding of a self-insurance program by issuing a public security or by using available money, the activity section 2259.032 addresses. Rather, Hudson's suit arises from the City's failure to defend and to indemnify Green. Thus, the issue here is whether the act of providing a defense and indemnity to an employee for a liability claim is a governmental function or a proprietary one. See Temple v. City of Houston, 189 S.W.3d 816, 820-21 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (explaining that act of making payroll deductions from deceased employee's paycheck to pay life insurance premiums, which the city argued was a governmental function, was not the basis of plaintiff's suit; rather, act at issue was State's failure to pay life insurance benefits to employee's beneficiary after he died).
Neither the City nor Hudson otherwise claim that the legislature has classified the act of providing a defense and indemnity to an employee as governmental or as proprietary in nature. Nor do we find any applicable statutory provisions. Accordingly, we turn to the common law to assist us in classifying the function.
Texas courts have defined governmental functions as those public acts that a municipality performs as the agent of the State in furtherance of general law for the interest of the public at large. Gates, 704 S.W.2d at 738; Truong v. City of Houston, 99 S.W.3d 204, 209-10 (Tex.App.-Houston [1st Dist.] 2002, no pet.); cf. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (defining "governmental functions" as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public"). A city functions in its governmental capacity when it performs functions mandated by the state. Truong, 99 S.W.3d at 210.
In contrast, when a municipality chooses to undertake activities that are not integral to its function as an arm of the state, those functions are generally considered proprietary functions. See City of Houston v. Sw. Concrete Const., Inc., 835 S.W.2d 728, 731 (Tex.App.-Houston [14th Dist.] 1992, writ denied). More precisely, Texas courts have defined a municipality's proprietary functions as "one a city performs, in its discretion, primarily for the benefit of those within the corporate limits of the city, rather than for the use by the general public." Truong, 99 S.W.3d at 209 (citing City of Gladewater v. Pike, 727 S.W.2d 514, 519 (Tex.1987)); cf. TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(b) (defining "proprietary functions" as "those functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality"). In other words, actions "undertaken for the benefit of private enterprise or the residents of the municipality rather than for the benefit of the general public" are deemed proprietary. See Sw. Concrete, 835 S.W.2d at 731.
One Texas court has summarized the distinction between governmental and proprietary functions as follows: "[T]he key *250 difference between governmental and proprietary functionsboth of which are performed by municipalities for the benefit of their citizensis this: Governmental functions are what a municipality must do for its citizens and proprietary functions are what a municipality may, in its discretion, perform for its inhabitants." Oldfield v. City of Houston, 15 S.W.3d 219, 226 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). In a commentary, Chief Justice Greenhill offered the following practical explanation: "Essentially, governmental functions are those normally performed by governmental units, e.g., police and fire protection, while the proprietary functions are those that can be, and often are provided by private persons, e.g., gas and electric service." Greenhill and Murto, Governmental Immunity, 49 TEXAS L. REV. 462, 463 (1971).
Here, the City has not conclusively shown that its act of providing a defense and indemnity to its employees was a governmental function. See City of Dallas v. Jennings, 142 S.W.3d 310, 315 (Tex.2004). Indeed, such act exhibits the indicia of a proprietary function, not a governmental one.
Significantly, the City's act of providing a defense and indemnity primarily benefits the City's employees, not the public at large. See Bailey v. City of Austin, 972 S.W.2d 180, 193 (Tex.App.-Austin 1998, pet. denied) (holding "[t]he City does not contend that it performs these acts [offering, administering, and overseeing health care plans for its own employees] for the general public, nor can it be reasonably argued that such acts are in `furtherance of general law for the interest of the public at large.'"). In addition, the State does not require the City to provide liability coverage to its employees. Cf. Wallace v. City of Midland, 836 S.W.2d 641, 642 (Tex. App.-El Paso 1992, writ denied) (concluding that city's function of providing worker's compensation insurance to its employees was a governmental function, not a proprietary one because providing such coverage is required by Workers Compensation Act). Instead, the City, in its discretion, has voluntarily chosen, without State compulsion, to provide a defense and indemnity to its employees through self-insurance. See Gates, 704 S.W.2d at 738-39; Temple, 189 S.W.3d at 819.
Moreover, such conduct is not integral to the City's function as an arm of the state. See Bailey, 972 S.W.2d at 193 (explaining that providing and administering health insurance plans for employees not integral to city's function as arm of State). To the contrary, defending and indemnifying a party for a liability claim is the type of conduct normally performed by a private entity, not a governmental one. See Whatley v. City of Dallas, 758 S.W.2d 301, 304 (Tex.App.-Dallas 1988, writ denied) (explaining that "having assumed administration of its own liability protection plan, [the City of Dallas] is cast in the role of an insurer").
We conclude that the City's act of providing a defense and indemnity to its employees for liability claims through self-insurance is a proprietary function. See City of Dallas v. Csaszar, No. 05-99-00208-CV, 1999 WL 12680769 at *3 (Tex. App.-Dallas Dec. 30, 1999, pet. denied) (not designated for publication) (holding that city's act of providing liability insurance coverage to its employee was a proprietary function, which subjected city to same rules and liabilities as any other insurance provider). Therefore, we hold that Hudson's suit against the City was not barred by governmental immunity.
We sustain Hudson's first issue.

Failure to Comply with Notice-of-Suit Provision
As described, Hudson, as an assignee of Green, sued the City claiming that it had *251 breached its duty to defend and to indemnify Green in the initial tort suit. Hudson also asserted a Stowers claim against the City arising from its refusal to accept the settlement offered by Hudson after Hudson had obtained a default judgment against Green totaling $3.5 million.
As a ground for summary judgment, the City asserted that it did not owe Green a duty to defend or to indemnify because she had failed to notify the City of the underlying tort suit, as required by Houston city ordinance. In its "conclusions of law," the trial court cited lack of notice as a ground supporting summary judgment in favor of the City.
It appears undisputed that the terms of insurance coverage in this case are found in sections 2-303, 2-304, and 2-305 of the Houston Code of Ordinances.[8] These sections, which are part of the summary judgment record, provide, in relevant part, as follows:
Sec. 2-303. Legal representation.
(a) The city shall, subject to the exclusions described below, provide legal representation to a covered person for any claim or lawsuit brought against the covered person alleging acts or omissions by the covered person during the course and scope of their assigned duties with the city.
. . . .
Sec. 2-304. Indemnification.
(a) The city shall, subject to the exclusions and other provisions of this section, pay judgments, attorney's fees and costs assessed against a covered person in a lawsuit for which the city has an obligation to provide legal representation under section 2-303, above.
. . . .
Sec. 2-305. Duties and responsibilities of covered persons.
In order to receive the benefits of the legal representation and indemnification provisions of this article a covered person must:
(1) Notify the city attorney, in writing, as soon as practicable upon receipt of written notice of a claim or lawsuit, but no later than five working days after receipt[.]
. . . .

1. Actual Notice
In her second issue, Hudson contends that summary judgment cannot be sustained on the ground that Green failed to give notice of the tort suit as required by section 2-305. Hudson does not dispute, and her own summary judgment evidence shows, that Green never gave notice of suit to the City or requested the City to defend her against Hudson's claims. Nonetheless, Hudson asserts that Green's failure to give notice does not defeat her claims because the City had actual notice of the tort suit.
In short, the law does not support Hudson's position. The Supreme Court of Texas has consistently held that an insurer has no duty to defend or to indemnify an insured unless the insured forwards suit papers and requests a defense in compliance with the policy's notice-of-suit conditions. See Nat'l Union Fire Ins. Co. v. Crocker, 246 S.W.3d 603, 610 (Tex.2008); Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 174-75 (Tex.1995); Weaver v. Hartford Accident & Indem. *252 Co., 570 S.W.2d 367, 370 (Tex.1978). The supreme court has made equally as clear that actual knowledge of the suit, absent compliance of a policy's notice provisions, does not trigger a duty to defend the insured. See Crocker, 246 S.W.3d at 606-08.
In Crocker, the supreme court explained that "notice and delivery-of-suit-papers provisions in insurance policies serve two essential purposes: (1) they facilitate a timely and effective defense of the claim against the insured, and more fundamentally, (2) they trigger the insurer's duty to defend by notifying the insurer that a defense is expected." Id. at 608 (citing Weaver, 570 S.W.2d at 368-70 and Harwell, 896 S.W.2d at 172, 174). The supreme court continued,
Mere awareness of a claim or suit does not impose a duty on the insurer to defend under the policy; there is no unilateral duty to act unless and until the . . . insured first requests a defensea threshold duty that the insured fulfills under the policy by notifying the insurer that the insured has been served with process and the insurer is expected to answer on its behalf.
Id.
In sum, Weaver, Harwell, and Crocker develop the following rule: an insurer has no duty to defend under a policy unless and until the insured complies with the notice-of-suit conditions and demands a defense. Jenkins v. State & County Mut. Fire Ins. Co., 287 S.W.3d 891, 897 (Tex. App.-Fort Worth 2009, pet. denied). The rule applies regardless of whether the insurer knows that the insured has been sued and served, regardless of whether the insurer actually defends another insured in the same litigation, and regardless of whether the insurer was aware of an interlocutory default judgment against the insured. See id. (explaining that theses circumstances were present in Weaver and Crocker).
Here, the City knew that Hudson had sued Green, the City defended itself in the tort suit, and it was aware of the default judgment before it became final. Nevertheless, section 2-305 makes clear that the City had no duty to defend or to indemnify Green unless she notified the City of the tort suit in accordance with the notice provisions of that section. Green never provided notice to the City of the suit and never requested a defense.[9] Under such circumstances, the controlling case law requires us to conclude that the City had no duty to defend or to indemnify Green, regardless of whether it had actual knowledge of the suit.[10]See id.; see also Crocker, *253 246 S.W.3d at 610; Harwell, 896 S.W.2d at 174-75; Weaver, 570 S.W.2d at 370.

2. Prejudice
Hudson also contends that the City has not shown that it was prejudiced by Green's failure to provide notice because the City had actual knowledge of the suit. An insured's failure to timely notify its insurer of a claim or suit does not defeat coverage if the insurer was not prejudiced by the delay. PAJ, Inc. v. Hanover Ins. Co., 243 S.W.3d 630, 636-37 (Tex.2008). Nonetheless, an insurer's actual knowledge of a claim or suit does not preclude a showing of prejudice as a matter of law. See Crocker, 246 S.W.3d at 609-10; Jenkins, 287 S.W.3d at 898; Md. Cas. Co. v. Am. Home Assurance Co., 277 S.W.3d 107, 117 (Tex.App.-Houston [1st Dist.] 2009, pet. granted).
Here, we must determine whether the City proved prejudice as a matter of law. In Crocker, the supreme court distinguished between late notice of suit, as in PAJ, and no notice of suit, as in Crocker. The court explained, "In the pending case,. . . the additional insured's notice was not merely late; it was wholly lacking. PAJ's notice was tardy; Morris's [the insured in Crocker] was nonexistent." Crocker, 246 S.W.3d at 609. The court further stated that [the insurer] National Union was "obviously prejudiced in the sense that it was exposed to a $1 million judgment." Id. Relying on Crocker, the Fort Worth Court of Appeals in Jenkins considered the issue of whether an insurer's actual knowledge of an underlying suit against an insured, and its defense of another insured in that same suit, prevented the insurer's later claim that it was prejudiced as a matter of law by the insured's failure to provide notice of suit. The court also considered whether the insurer, State and County Mutual Fire Insurance ("State and County Mutual"), had shown that its insured's failure to provide notice had prejudiced it as a matter of law.
In Jenkins, the insured, Lemmon, failed to comply with the insurance policy's notice-of-suit provision and permitted a default judgment to be taken against him in a tort suit. 287 S.W.3d at 893-94. The State and County Mutual, defended other insured defendants in the suit. Id. State and County Mutual was fully aware that Lemmon had been sued and served and that a default judgment had been taken against him. Id.
Jenkins, who was the tort plaintiff, sued State and County Mutual to collect the default judgment he had obtained against Lemmon. Id. State and County Mutual filed a motion for summary judgment asserting that it had no duty to indemnify or to pay the default judgment because Lemmon had not complied with the notice-of-suit provision. Id.
The trial court granted summary judgment against Jenkins, and he appealed. Id. Jenkins argued that State and County Mutual waived Lemmon's compliance with the policy's notice-of-suit condition because it had not defended Lemmon despite having actual knowledge of Jenkins's suit against Lemmon. Id. Jenkins also asserted that State and County Mutual could not show that Lemmon's failure to provide notice had prejudiced it. Id. at 898.
The court of appeals affirmed the summary judgment. Id. at 898-99. It held that Lemmon's failure to comply with the policy's notice-of-suit provision prejudiced State and County Mutual as a matter of law. Id. at 899. In reaching its holding, the court discussed the similarities between the facts before it and those present in Crocker:
[A]s in Crocker, [Lemmon's] notice [was] not merely late; it [was] wholly lacking.
*254 Just as National Union's actual knowledge of the suit against Morris [in Crocker] did not preclude proof of prejudice. State and County actual knowledge of the suit against [Lemmon] does not preclude proof of prejudice. And just as National Union was "obviously" prejudiced by the rendition of a $1 million judgment against Morris, State and County was prejudiced by the $650,000 judgment rendered against Lemmon.
Because [Lemmon] never gave State and County any notice of the suit, never complied with the State and County's policy's relevant notice provisions, never furnished it copies of any relevant papers as required by the policy, and never in any manner requested a defense from State and County, State and County owed no duty to defend [Lemmon], was prejudiced by the default judgment [Jenkins] took against [Lemmon], and was entitled to rely on its policy provisions precluding coverage on the basis of such noncompliance. We therefore hold that the trial court did not err by granting a traditional summary judgment in State and County's favor. . . .
Id. at 899.
Similar to the facts of Crocker and Jenkins, the insured in this case, Green, was not merely late in providing notice of suit; Green wholly failed to provide notice. The City's actual knowledge of the suit or of the default judgment does not preclude a showing of prejudice.[11]See Crocker, 246 S.W.3d at 609-10; Jenkins, 287 S.W.3d at 897.
Here, the summary judgment evidence shows the City was prejudiced. The purpose of a notice-of-suit provision in an insurance policy is to enable an insurer to investigate the circumstances of the policy-invoking incident so that the insurer has adequate time to prepare to defend any claims. Employers Cas. Co. v. Glens Falls Ins. Co., 484 S.W.2d 570, 575 (Tex.1972). When determining an insurer's claim that it was prejudiced as a matter of law, the crucial inquiry is whether the insurer's ability to defend against the claim has been irreparably impaired by an insured's failure to comply with a notice-of-suit provision. See Blanton v. Vesta Lloyds Ins. Co., 185 S.W.3d 607, 612 (Tex.App.-Dallas 2006, no pet.) (citing 13 COUCH ON INSURANCE § 186:14 (3d ed. 2005)). Here, Green's failure to comply with section 2-305 and her nonparticipation in the tort litigation resulted in the rendition of a $3.5 million default judgment against her.
In Coastal Refining & Marketing, Inc. v. United States Fidelity and Guaranty Co., the court discussed the prejudicial effect of a default judgment when an insurer had not received notice from its insured. 218 S.W.3d 279, 287-88 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). The court explained that a substantive change in position for an insurer caused by a default judgment generally renders a default judgment prejudicial because "[b]efore default judgment, an insurer can escape liability for a covered claim if the plaintiff fails to meet its burden of proof," but, "[a]fter a default judgment, . . . an insurer can no *255 longer defend against the underlying claim unless it first meets a new burden of proof on new issues." Id. at 288.
We conclude that the rendition of the $3.5 million default judgment against Green prejudiced the City as a matter of law. The City was entitled to rely on section 2-305's notice-of-suit provision. By failing to comply with that provision and to request a defense, Green deprived the City of its ability to answer and to defend against the Hudson's claims, to conduct discovery, and to fully litigate the merits of the claims. See Jenkins, 287 S.W.3d at 899; Md. Cas. Co., 277 S.W.3d at 117; see also Wash. Mut. Bank v. Commonwealth Land Title Ins. Co., No. 13-08-00256-CV, 2010 WL 135685, at *3 n. 2 (Tex.App.-Corpus Christi Jan. 14, 2010, no pet.) (mem. op.) (explaining that focus is not on whether defenses could have been successfully raised for insured in underlying suit but whether insurer was denied the opportunity to mount a defense against the claims before a judgment is taken).
In short, the default judgment changed the complexion of the lawsuit. Once the default judgment was rendered against Green, the City could no longer defend against Hudson's tort claims unless it first met a new burden of proof on new issues. See Coastal Ref. & Mktg., Inc., 218 S.W.3d at 287-88. Moreover, the record shows that Hudson is using the default judgment to significantly leverage her Stowers claim.
Under the circumstances presented, the City had no duty to defend or to indemnify Green and no duty to pay the default judgment. Accordingly, Hudson's claims, including her Stowers and Insurance Code claims, fail as a matter of law.
We conclude that the City was entitled to summary judgment based on its assertion that Green failed to comply with the notice-of-suit provision found in section 2-305. We hold that the trial court properly granted summary judgment in favor of the City.
We overrule Hudson's second issue.[12]

Conclusion
We affirm the judgment of the trial court.
NOTES
[1] See Hudson v. City of Houston, No. 14-03-00565-CV, 2005 WL 3995160, at *3 (Tex. App.-Houston [14th Dist.] 2005, no pet.) (mem. op.).
[2] McPeters died while the third suit was pending in the trial court. Neither he nor his estate are named as parties in this appeal.
[3] See G.A. Stowers Furniture Co. v. American Indem., Co., 15 S.W.2d 544, 547-48 (Tex. Comm'n App. 1929, holding approved).
[4] See Act of May 10, 2001, 77th Leg., R.S., ch. 290, § 1, 2001 Tex. Gen. Laws 548, 548-51, repealed and recodified by Act of May 22, 2003, 78th Leg., R.S., ch. 1674 §§ 2, 26, 2003 Tex. Gen. Laws 3611, 2659-61 (current versions at TEX. INS.CODE ANN. §§ 541.051, 541.056 (Vernon 2009)).
[5] For purposes of this case, it is not disputed that Green was a "covered person" as referenced in the ordinances.
[6] The Supreme Court of Texas has made clear that findings of fact and conclusions of law are improper in summary judgment proceedings. IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 441 (Tex.1997). If summary judgment is proper, there are no facts to find, and the legal conclusions have already been stated in the motion and the response. Id. Here, the trial court did not make findings of fact. And, it appears that the conclusions of law, signed on the same date as the order granting and denying the respective motions for summary judgment, were intended to identify the bases on which the trial court made its summary judgment rulings.
[7] Governmental immunity may be raised in a plea to the jurisdiction or in a motion for summary judgment. Learners Online, Inc. v. Dallas Indep. Sch. Dist., No. 05-08-00946-CV, 2009 WL 2138974, at *4 (Tex.App.-Dallas July 20, 2009, no pet. h.); see, e.g., Harris County v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004). When governmental immunity is raised in a motion for summary judgment, we apply the standard of review for summary judgments. See Learners Online, Inc., 2009 WL 2138974, at *4. Governmental immunity is a jurisdictional prerequisite that may be asserted at any stage of the proceedings, either by the parties or by the court on its own motion. F.D.I.C. v. Golden Imports, Inc., 859 S.W.2d 635, 648 (Tex.App.-Houston [1st Dist.] 1993, no writ). Because it implicates subject matter jurisdiction, governmental immunity may be reviewed on appeal regardless of whether the trial court expressly ruled on that issue. See City of Houston v. Northwood Mun. Util. Dist. No. 1, 73 S.W.3d 304, 313 (Tex. App.-Houston [1st Dist.] 2001, pet. denied).
[8] As discussed, when the City provided liability coverage to its employees, it acted in a proprietary role, not a governmental one. In so doing, the City was cast in the role of a private insurer. See Whatley v. City of Dallas, 758 S.W.2d 301, 304 (Tex.App.-Dallas 1988, writ denied). The parties do not dispute that the terms of defense and indemnity coverage are contained in the cited city ordinances. See id.
[9] The Stowers demand letter does not constitute a notice of the suit in accordance with section 2-305. The demand letter was sent by Hudson's attorney, not Green. It was also sent well beyond the five-day period required by section 2-305. The letter was also sent after a default judgment had been obtained against Green. See Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co., 218 S.W.3d 279, 287-88 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (explaining that substantive change in position for an insurer caused by a default judgment generally renders a default judgment prejudicial because "[b]efore default judgment, an insurer can escape liability for a covered claim if the plaintiff fails to meet its burden of proof," but, "[a]fter a default judgment, . . . an insurer can no longer defend against the underlying claim unless it first meets a new burden of proof on new issues").
[10] In her opening brief, Hudson contends that "the City decided not to defend Ms. Green." In support of this contention, Hudson cites the deposition testimony of an assistant city attorney, which Hudson had offered in support of her motion for partial summary judgment. The cited testimony, however, does not support Hudson's contention. To the contrary, the attorney's testimony indicates that a decision whether to defend Green was never made because Green never requested a defense from the City.
[11] Hudson cites Liberty Mutual Ins. Co. v. Cruz, 883 S.W.2d 164, 166 (Tex. 1993) and Struna v. Concord Ins. Services, Inc., 11 S.W.3d 355, 359 (Tex.App.-Houston [1st Dist.] 2000, no pet.) to support her assertion that actual notice of the suit precluded a determination that the City had suffered prejudice as a matter of law. Appellant's briefing does not recognize that the supreme court indicated in Crocker that an insurer may show that it has been prejudiced as a matter of law when the insured has failed to provide the insurer with notice of suit and to request a defense and coverage regardless of whether the insurer has actual knowledge of the suit. Nat'l Union Fire Ins. Co. v. Crocker, 246 S.W.3d 603, 609 (Tex.2008).
[12] Hudson's third through eighth issues attack the other grounds cited by the trial court to support its summary-judgment rulings. Because the City's lack-of-notice ground supports the trial court's judgment, we do not address Hudson's remaining issues. See TEX. R.APP. P. 47.1.