# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2022

Lyle W. Cayce
Clerk

No. 20-20621

Osman Moreno,

*Plaintiff—Appellant*,

*versus*

Sentinel Insurance Company, Limited,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-cv-2968

Before Jones, Southwick, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Plaintiff–Appellant Osman Moreno appeals the district court's summary judgment dismissal of the breach of contract claims that he has asserted, as a third-party beneficiary, against Sentinel Insurance Company, Limited. The district court determined that the insurer's duty to defend its insured, on which Moreno's claims are based, was never triggered, relative to Moreno's underlying personal injury suit, because the insured, N.F. Painting, Inc., never requested a defense or sought coverage. Considering the record before us and applying Texas law, we find no error in the district court's assessment. Thus, we AFFIRM.

No. 20-20621

## I.

In July 2016, Moreno worked as a painter for N.F. Painting, Inc. ("N.F. Painting") on a project undertaken for Beazer Homes Texas, L.P. and Beazer Homes Texas Holdings, Inc. (collectively "Beazer Homes"). Beazer Homes, a homebuilder, contracted N.F. Painting for work on one of its developments. While on site, Moreno fell from a ladder and sustained serious injuries.

## A.

In November 2016, Moreno sued N.F. Painting and Beazer Homes for damages, in Texas state court, alleging negligence, gross negligence, and negligence *per se* in connection with his fall. At all relevant times, N.F. Painting was insured by Sentinel Insurance Company, Limited ("Sentinel") under a "Business Owner's Policy." As part of a "Master Construction Agreement" with N.F. Painting, Beazer Homes was an "additional insured" under the Sentinel policy.

N.F. Painting's policy provided coverage for business liability, including personal injury, up to $1,000,000. Regarding payment under that coverage, and the provision of a defense for the insured, the policy stated, in pertinent part:

### A. COVERAGES

1. **BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

**Insuring Agreement**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

2

No. 20-20621

We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

We may, at our discretion, investigate any occurrence" or offense and settle any claim or "suit" that may result. . . .

The Sentinel policy also contained two exclusions that are relevant here.

## B. EXCLUSIONS

### 1. Applicable To Business Liability Coverage

This insurance does not apply to:

**a.– c.  [omitted]**

**d.       Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.       Employer's Liability**

"Bodily injury" to:

**(1)** An employee" of the insured arising out of and in the course of:

  **(a)** Employment by the insured; or

  **(b)** Performing duties related to the conduct of the insured's business[.]

**(2)** [omitted]

This exclusion applies:

3

No. 20-20621

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

Regarding the insured's "Duties In The Event of Occurrence, Offense, Claim Or Suit," Section E.2 of the policy stated:

**E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**

**1. [omitted]**

**2. Duties In The Event of Occurrence, Offense, Claim Or Suit**

**a.    Notice of Occurrence or Offense**

You or any additional insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the occurrence or offense.

No. 20-20621

**b.    Notice of Claim**

If a claim is made or "suit" is brought against any insured, you or any additional insured must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**  Notify us as soon as practicable.

You or any additional insured must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

**c.    Assistance And Cooperation Of The Insured**

You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.    Obligations At The Insured's Own Cost**
No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

No. 20-20621

Lastly, regarding suits against Sentinel, Section E.4 of the policy stated:

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Form:

**a.**     To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.**     To sue us on this Coverage Form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

B.

Despite being served with Moreno's suit on March 9, 2017, N.F. Painting did not contact Sentinel to request, or even inquire about, coverage and/or a defense under its liability policy. Nor did it send Sentinel a copy of the petition or any other documentation received in connection with the suit. Instead, N.F. Painting retained the services of attorney Armando Lopez. On April 3, 2017, Lopez filed an answer on behalf of N.F. Painting and, on May 12, 2017, provided responses to Moreno's requests for admissions and disclosures. In those discovery responses, N.F. Painting denied possessing any insurance that would cover the incident.

N.F. Painting's co-defendant, Beazer Homes, however, did not hesitate to contact Sentinel about Moreno's suit. Specifically, the declaration of Julie Katchmir, Sentinel's Claim Consultant, states that, on May 18, 2017,

6

No. 20-20621

Sentinel received a copy of an April 4, 2017 letter from counsel for Beazer Homes that was addressed to Attorney Lopez. The April 4, 2017 letter was accompanied by a copy of a March 23, 2017 letter, entitled "DEMAND AND TENDER FOR DEFENSE AND INDEMNITY," that Beazer Homes had sent, via certified mail, to Nelson Flores for N.F. Painting. In both letters, Beazer Homes, referencing the state court suit filed by Moreno against it and N.F. Painting, demanded defense and indemnity (pursuant to the indemnification paragraph of its contract with N.F. Painting), asked that N.F. Painting's insurance carrier be notified of the claim, and requested written confirmation of N.F. Painting's agreement to defend and indemnify Beazer Homes.[1] That same day, May 18, 2017, another Sentinel claims representative, Lori Toliver Cawley, sent a letter to "Nelson Flores dba N&F Painting," notifying N.F. Painting of Sentinel's receipt of the April 4, 2017 "claim" submitted by Beazer Home, and asking Flores to contact her "immediately" to "expedite the handling of your claim."[2]

On May 22, 2017, after receiving no response to Cawley's May 18, 2017 letter, Sentinel, through Katchmir, emailed and left a voice mail for Lopez, who was identified as N.F. Painting's attorney in the April 4, 2017 letter from Beazer Homes' attorney. Katchmir queried whether Lopez was representing N.F. Painting in the state court suit filed by Moreno, and indicated that she was seeking contact information for N.F. Painting, so that she

---

[1] Both letters identify the state court suit by name, judicial district, and docket number.

[2] Although other documents in the record identify Sentinel's insured as N.F. Painting, the claims documentation completed by Sentinel's claims representatives refers to the company as "Nelson Flores dba N&F Painting" or simply "N&F Painting." The discrepancy presumably exists because certain portions of the insurance policy identify the insured as "Nelson Flores dba N&F Painting.". When quoting the claims documentation or Katchmir's declaration, we will use the same business name and spelling stated therein.

could "discuss the matter" with it. Eight days later, on May 30, 2017, after still receiving no response from Lopez or N.F. Painting, Sentinel contacted Nelson Flores, the owner of N.F. Painting, by telephone. According to Katchmir's declaration, Flores told her that Lopez was representing N.F. Painting in the state court suit filed by Moreno and recommended that she contact Lopez to obtain a copy of the complaint; Flores did not request that Sentinel defend and indemnify N.F. Painting in the state court suit.

By letter dated June 2, 2017, from Katchmir to counsel for Beazer Homes, Sentinel acknowledged receipt of the April 4, 2017 letter addressed to Attorney Lopez, identified itself as the business liability carrier for N.F. Painting, and agreed to defend and indemnify Beazer Homes "without a reservation of rights" (pursuant to the construction contract between Beazer Homes and N.F. Painting) in the state court suit filed by Moreno.[3]

On June 12, 2017, having not yet received a response to her inquires, Katchmir sent a letter to Lopez, by both email and U.S. Mail, referencing her May 22, 2017 email and phone call, Sentinel's receipt of the letter addressed to Lopez from Beazer Homes' counsel, and Sentinel's insurance carrier status for N.F. Painting.[4] Katchmir's letter also requested that Lopez call her, as soon as possible, if he were representing N.F. Painting in the state court suit file by Moreno, to discuss the matter.

The next day, June 13, 2017, Katchmir talked to Lopez by telephone. According to Katchmir's declaration, Lopez confirmed, during the call, that he was representing N.F. Painting in the Moreno's state court suit and that N.F. Painting had hired him, rather than reporting or tendering the suit to

---

[3] The letter identified the name of the attorney to whom Sentinel would be assigning Beazer Home's representation.

[4] The letter indicates that a copy was sent to Flores via U.S. mail.

Sentinel, "because Flores did not believe that there would be coverage for [the suit] due to the fact that Moreno, the plaintiff [], was an employee of N&F Painting." Katchmir's declaration also states: "Despite the lack of tender from N&F Painting to Sentinel, I expressly asked Attorney Lopez to provide me with the complaint in the Underlying Litigation."[5]

Later the same day, June 13, 2017, a person associated with Lopez's law firm emailed N.F. Painting's "Original Answer & Request for Disclosure," "Responses to Plaintiff's Request for Admissions," "Responses to Plaintiff's Request for Production," "Responses to Plaintiff's Request for Disclosures," and "Answers to Plaintiff's Interrogatories" to Katchmir, but failed to include the complaint that Katchmir had requested.

On June 19, 2017, Katchmir sent another email to Lopez, thanking him for the previously sent documents and again requesting a copy of the complaint. Later that day, Lopez sent a copy of the complaint (petition) to Katchmir by reply email, which simply stated: "Attached." As noted in Katchmir's declaration, Lopez's email communication did not request that Sentinel defend and indemnify N&F Painting [in the underlying state court suit].

Thereafter, in a July 5, 2017 letter to "Nelson Flores DBA N&F Painting," which was sent to Flores by certified mail and by regular U.S. Mail to Lopez, Katchmir (on behalf of Sentinel) referenced the materials provided to her by Lopez and stated:

> "Based on our review, we must respectfully disclaim coverage under the Business Liability policy. As such, we will not be providing the Defense or Indemnification for Nelson Flores or

---

[5] Although Katchmir refers to the document as a "complaint," the document actually is styled as a "petition."

No. 20-20621

> N&F Painting under the policy in connection with [Moreno's state court suit]. Our coverage determination is outlined below.

The remainder of the July 5, 2017 letter explains that Sentinel's "no coverage" determination is based on Moreno's status as employee of N.F. Painting, who was injured while in the course and scope of his employment duties, thereby triggering Exclusions B(1)(d) and (e). Notably, however, the July 5 letter also states:

> Our analysis is based on the facts as we presently understand them. If there are new allegations or additional information that you feel may alter our position as to the coverage, please forward that information to us for consideration.

Finally, the July 5 letter concludes with a request that Katchmir be contacted regarding any questions about "this matter or the contents of this letter."

In her declaration, Katchmir characterizes the July 5, 2017 letter as "confirm[ing] that Sentinel would not be providing a defense or indemnification to N&F Painting for the [Moreno state court suit]." In any event, the letter mailed to "Nelson Flores DBA N&F Painting" was returned "unclaimed" and, though a copy of the letter also was mailed to Lopez on July 5, and then emailed on September 6, 2017 (upon the return of the certified letter as "unclaimed"), Sentinel never received any response to the letter from Lopez or Flores.

## C.

In mid-September 2018, Beazer Homes settled with Moreno and was dismissed from the state court suit. The litigation between N.F. Painting and Moreno, however, progressed and, on October 23, 2018, Moreno filed a "First Amended Petition," alleging (for the first time) that he was injured while working "as an independently contracted painter." It is undisputed that Sentinel was not notified when the amended petition was filed. Nor did any of the remaining parties to the state court suit, or their counsel, send a

copy of the amended petition to Sentinel, or request coverage relative thereto.

In late 2018, an April 15, 2019 trial date was set in the state court suit. But, for reasons not specified in the record, the trial did not commence in April as scheduled. Instead, by order dated May 3, 2019, the April 2019 trial date was reset to the two-week period commencing on August 19, 2019. Approximately two weeks later, however, on May 17, 2019, the parties submitted a "Proposed Agreed Judgment" to the state court.

Despite the April 2019 trial date having been reset to August 2019, the May 17, 2019 "Proposed Agreed Judgment" surprisingly represents that the case "proceeded to trial" on April 15, 2019, and, "at the conclusion of the evidence, the Court considered the evidence presented by way of live testimony, exhibits, pleadings, and deposition designations and issued Findings of Fact and Conclusions of Law." Referencing the "Court's Findings of Fact and Conclusions of Law," the "Proposed Agreed Judgment" "order[s], adjudge[s], and decree[s]," among other things, that:

(1) Moreno was "an independently contracted painter" and not an employee at the time of his July 3, 2016 injury;

(2) Sentinel provided Business Liability insurance with a $1,000,000 limit of liability to N.F. Painting, Inc., at the time of Moreno's injury;

(3) N.F. Painting, Inc., placed Sentinel on proper notice of Moreno's claims; and

(4) Moreno was entitled to recover a total of $1,627,541.35 in damages, before interest and costs, from N.F. Painting, Inc.

The "Proposed Agreed Judgment" was signed by the state court judge on May 20, 2019.[6] According to Katchmir's declaration, neither N.F.

---

[6] The word "Proposed" remains in the title of the document signed by the state court judge on May 20, 2019. Nevertheless, to distinguish the document signed by the

No. 20-20621

Painting nor Lopez reported the May 20, 2019 "Agreed Judgment" to Sentinel.  Nor did N.F. Painting, through Flores or Lopez, request insurance coverage, or defense, from Sentinel in connection with the Agreed Judgment.

## II.

Approximately one month later, on June 26, 2019, Moreno commenced the instant action by suing Sentinel and The Hartford Financial Services Group, Inc. ("Hartford") in Texas state court.  The state court petition largely restates the "findings" of the May 20, 2019 Agreed Judgment,  and alleges that  Sentinel and Hartford "failed to satisfy their obligations pursuant to their insurance policy with [N.F. Painting, Inc.]," which constituted a "material breach of contract." Based on these assertions, Moreno, proceeding as a third-party beneficiary to the liability insurance contract, requested, *inter alia*, damages in the amount awarded against N.F. Painting in the May 20, 2019 Agreed Judgment"($1,627,541.35).  The defendants removed the case to federal court under diversity jurisdiction.

Once in federal court, Moreno voluntarily dismissed his claims against Hartford.  Thereafter, Sentinel and Moreno filed cross-motions for summary judgment. Sentinel maintained that Moreno's claims fail because: (1) Sentinel did not breach its contractual duties to N.F. Painting, including its duty to defend, since N.F. Painting never requested defense or coverage from Sentinel relative to Moreno's state court suit; thus, Sentinel's duty to defend NF Painting was never triggered;  and (2) the Sentinel policy's exclusions applicable to "employees" preclude coverage for Moreno's damages because Moreno was an employee.  Conversely, Moreno argued that N.F. Painting had properly notified Sentinel of his personal injury claim, and that Sentinel

state court judge, on May 20, from the document submitted by the parties on May 19, we hereafter refer to the May 20 document as the "Agreed Judgment."

could have provided coverage, defense, and indemnification to N.F. Painting, but refused. Additionally, regarding the policy's "employee" coverage exclusions, Moreno maintained that, by virtue of the May 20, 2019 state court judgment, Sentinel was collaterally estopped from denying that Moreno was an independent contractor, and in any event, the summary judgment evidence established that Moreno was not an employee.

Rejecting Moreno's collateral estoppel assertion, the district court reasoned that Moreno had not shown that relevant "facts" were "actually litigated" by true adversaries and were essential to the judgment; nor had Moreno established privity.[7] The district court additionally determined that N.F. Painting had not satisfied the notice requirements of the policy, and had failed to otherwise notify Sentinel of Moreno's suit and had failed to request a defense. Accordingly, the district court concluded, Sentinel had not breached the insurance contract by not defending N.F. Painting against the Moreno's state court suit and by not paying the May 20, 2019 Agreed Judgment against N.F. Painting. Given these determinations, the district court denied Moreno's motion, and granted Sentinel's, without the necessity of considering the parties' competing positions regarding the applicability of the policy's "employee" coverage exclusions. This appeal followed.

---

[7] The district court discussed the Agreed Judgment at length, noting that this "curious document" referenced a trial that did not occur and findings of fact and law that were never made before decreeing N.F. Painting liable. The court then queried why N.F. Painting "should suddenly confess judgment for damages in excess of $1.6 million." The district court concluded that "the Agreed Judgment transparently intended to establish Sentinel's liability for the judgment" and serve as the basis for the present suit.

No. 20-20621

## III.

We review grants of summary judgment *de novo*. *Renwick v. PNK Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018). Summary judgment is appropriate where there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law." *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 456 (5th Cir. 2003) (internal quotation marks and citation omitted). "A genuine [dispute] of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017). If the moving party initially shows that the non-movant's case lacks support, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). All facts and reasonable inferences are construed in favor of the nonmovant, and the court should not weigh evidence or make credibility findings. *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009). The resolution of a genuine dispute of material fact "is the exclusive province of the trier of fact and may not be decided at the summary judgment stage." *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n.3 (5th Cir. 2002).

## IV.

As clarified on appeal, Moreno's claims against Sentinel are premised upon on his assertion that Sentinel had wrongly refused to defend its insured, N.F. Painting, relative to the personal injury claim that Moreno previously asserted against N.F. Painting in state court and, thus, is legally responsible for the damages awarded against N.F. Painting in the May 20, 2019 Agreed Judgment. *See Great Am. Ins. Co. v. Hamel*, 525 S.W.3d 665, 665–71 (Tex. 2017) (an insurer who breaches its duty to defend cannot collaterally attack a

14

covered judgment or settlement if the insured had an actual risk of liability at the time of trial or settlement, or had some other meaningful incentive to ensure the judgment or settlement accurately reflects the plaintiff's damages and thus the insured's covered liability loss).[8] For the reasons aptly stated in its comprehensive, twenty-one page "Memorandum and Order," the district court rejected Moreno's position. Having carefully considered the parties' submissions, pertinent portions of the record in this matter and in the underlying state court litigation, as well as applicable principles of Texas law, we agree with the district court.

### A. Duty to Defend and Indemnify

As noted by the district court, it is well-established, under Texas law, that "[m]ere awareness of a claim or suit does not impose a duty on the insurer to defend under the policy...." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 608 (Tex. 2008).[9] "Put simply, there is no duty to provide a defense absent a request for coverage." *Id.* at 607. Indeed, the Texas Supreme Court has consistently held that an insurer has no duty to defend or to indemnify an insured unless the insured forwards suit papers to the insurer and requests a defense in compliance with the policy's notice-of-suit conditions. *See Crocker,* 246 S.W.3d at 606–10; *Harwell v. State Farm*

---

[8] As stated above, Moreno additionally sought judgment in the district court based on collateral estoppel grounds. The district court rejected this argument. Moreno has not urged this argument on appeal; thus, it is abandoned. *See, e.g., Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.").

[9] The parties agree that Texas law governs this diversity suit. "Where, as here, the proper resolution of the case turns on the interpretation of Texas law," this court is "'bound to apply [Texas] law as interpreted by the state's highest court.'" *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) (quoting *Barfield v. Madison County*, 212 F.3d 269, 271–72 (5th Cir. 2000)).

*Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 174–75 (Tex. 1995); *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex. 1978).

In *Crocker*, the Texas Supreme Court explained "that notice and delivery-of-suit-papers provisions in insurance policies serve two essential purposes: (1) they facilitate a timely and effective defense of the claim against the insured, and more fundamentally, (2) they *trigger* the insurer's duty to defend by *notifying the insurer* that a defense is *expected*." 246 S.W.3d at 608 (emphasis added). Thus, in *Crocker*, "despite its actual knowledge of a covered suit against and service of process on [the additional insured], [the insurer] did not incur a duty to inform [the additional insured] of available coverage or his entitlement to a defense or to *sua sponte* provide one without any indication from [the additional insured], either explicit or implicit, that he wanted or expected to be defended." *Id.* at 610 (emphasis added).

"The rule from *Weaver*, *Harwell*, and *Crocker* is clear: an insurer has no duty to defend and no liability under a policy unless and until the insured in question complies with the notice-of-suit conditions and demands a defense." *Jenkins v. State & Cty. Mut. Fire Ins. Co.*, 287 S.W.3d 891, 897 (Tex. App. 2009, pet. denied). "The rule applies regardless of whether the insurer knows that the insured has been sued and served, regardless of whether the insurer actually defends another insured in the same litigation and regardless of whether the insurer was aware of an interlocutory default judgment against the insured." *Hudson v. City of Houston*, 392 S.W.3d 714, 726 (Tex. App. 2011)(citing *Jenkins*, 287 S.W.3d at 897).

In other words, despite having knowledge and opportunity, an insurer is not required to simply interject itself into a proceeding on its insured's behalf. *See Crocker*, 246 S.W.3d at 610 ("Insurers owe no duty to provide an unsought, uninvited, unrequested, unsolicited defense."). As explained in *Crocker*:

> [T]he requirement that an additional insured provide notice that it has been served with process is driven by a purpose distinct from the purpose underlying the requirement for notice of a claim or occurrence. Notice of service of process lets the insurer know that the insured is subject to default and expects the insurer to interpose a defense. An insurer cannot necessarily assume that an additional insured who has been served but has not given notice to the insurer is looking to the insurer to provide a defense. Potential insureds, for a variety of reasons, might well opt against seeking a defense from an insurer. For example, an additional insured may opt against invoking coverage because it wants to hire its own counsel and control its own defense.

246 S.W.3d at 610.

In *L'Atrium on the Creek I, L.P. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 326 F. Supp. 2d 787, 792–93 (N.D. Tex. 2004), a federal district court similarly explained the need for clarity regarding the insured's "duty to defend" expectations:

> Here, plaintiffs argue that the notice could come from any source, and that defendants received notice of the Ball litigation through the demand letters sent by Ball's attorneys. Pertinent authorities do not support such a broad proposition. Rather, it is the "action by the insured" in sending the suit papers to the insurer that "triggers the insurer's obligation to tender a defense and answer the suit." [*Members Ins. Co. v. Branscum,* 803 S.W.2d 462, 467 (Tex. App.—Dallas 1991, no writ)]. Plaintiffs may have had any number of reasons for failing to notify defendants that they had been served with process and were looking to defendants to defend and indemnify them. Defendants were entitled to rely on the fact that plaintiffs were represented by counsel and surely would have made a demand for defense and indemnification if they wanted defendants to be involved.

Given the foregoing authorities, construing insurance policy conditions comparable to those in Sentinel's policy, it is clear that, under Texas law, an insurer's duty to defend is not triggered unless and until the insured requests that a defense be provided. And, if a duty to defend is not triggered, it likewise is not breached when a defense is not provided. *See Crocker,* 246 S.W.3d at 609 ("Absent a threshold duty to defend, there can be no liability."); *Jenkins*, 287 S.W.3d at 896–97 ("If there is no duty to defend, there is not duty to indemnify.").

Here, as stated, N.F. Painting did not seek defense or coverage from Sentinel when it was served with Moreno's original state court petition; nor did it forward the suit papers that it received to Sentinel for that purpose. Rather, because N.F. Painting's owner, Flores, reportedly did not think Moreno's claim would be covered by the Sentinel policy—and so represented in its responses to Moreno's discovery requests—N.F. Painting hired its own counsel, Lopez. Indeed, N.F. Painting never sought to discuss the matter with Sentinel at all, and seemingly never would have, if Sentinel would not have initiated contact, in late May 2017, after receiving a copy of Beazer Homes' demand for defense and indemnity from Beazer Homes, *not* its insured, earlier that month.

Even after Sentinel assumed defense of Moreno's claims against Beazer Home, in June 2017, N.F. Painting did not tender (to Sentinel) defense of the claims that Moreno had asserted against it, or request coverage from Sentinel for the claims. Rather, Lopez's representation of N.F. Painting continued, without further request, or inquiry, by N.F. Painting regarding Sentinel's duty of defense or coverage. This remained true even when Moreno amended his complaint, in October 2018, to allege independent contractor (rather than employee) status, and N.F. Painting agreed, in May 2019, to entry of the Agreed Judgment against it for approximately $1.6 million in damages.

Moreno's arguments on appeal do not convince us that the district court erred in concluding that Sentinel's duty to defend N.F. Painting was *never* triggered, and thus was not breached, because N.F. Painting never sought a defense from Sentinel against Moreno's personal injury claims. That another insured, Beazer Homes, notified Sentinel of the suit against it and demanded a defense by Sentinel, as N.F. Painting's insurer, did not obligate Sentinel to also undertake N.F. Painting's defense. As explained above, Texas law requires a request from the insured for whom a defense would be provided, not someone else, to trigger the duty to defend.

Nor was Sentinel's duty to defend triggered when, on June 19, 2017, N.F. Painting's attorney, Lopez, emailed a copy of Moreno's state court petition to Katchmir, Sentinel's claims consultant, in response to Katchmir's request. As the notice of suit and delivery-of-suit-papers policy provisions have been construed by the Texas courts, an insured's transmittal of suit papers to the insurer triggers the duty of defense because, *in the ordinary case*, the documents are sent with the expectation that having the documents will enable *and* cause the insurer to promptly provide (or at least fund) the insured's defense against the claims asserted against it. This, however, is not the *ordinary* case.

Rather, on the summary judgment record before us—given N.F. Painting's initial determination that the Sentinel policy did not cover Moreno's claims, Attorney Lopez's continued representation of N.F. Painting, and the absence of *any* contemporaneous communications regarding N.F. Painting's defense, Lopez's role as counsel, possible substitution of counsel, or even the costs of defense—Lopez's June 19 transmittal of Moreno's petition to Katchmir cannot reasonably be construed to convey an expression of expectation, intent, or desire by N.F. Painting to

have Sentinel assume its defense.[10] Indeed, considering the instant *undisputed* facts, there is no indication that Lopez's transmittal of a copy of the petition to Katchmir, *solely* in response to *Katchmir's* request, expressed anything more than professional courtesy.

Contrary to Moreno's assertions, Katchmir's July 5, 2017 letter to Flores, on behalf of N.F. Painting, likewise does not reflect the awareness necessary to trigger Sentinel's duty to defend N.F. Painting, i.e., awareness that N.F. Painting expected Sentinel to assume its defense against Moreno's claims. In that letter, Sentinel "disclaimed coverage" (upon completing its review of the materials provided by N&F Painting's private attorney), stating "[a]s such, we will not be providing the Defense or Indemnification for Nelson Flores or N&F Painting under the policy in connection with this matter." Although Moreno argues this letter demonstrates that Sentinel understood N.F. Painting expected Sentinel to provide it with a defense, thus obviating the necessity of an express request by N.F. Painting for defense or coverage, the letter cannot reasonably support that inference.

First, the July 5, 2017 letter follows Katchmir's May 30, 2017 telephone conversation with Flores, who told Katchmir that *Lopez* was representing N.F. Painting, *and* Katchmir's June 13, 2017 phone conversation with Lopez, who informed her that N.F. Painting had hired him, rather than "report[ing] or tender[ing] the Underlying Lawsuit to Sentinel," based on N.F. Painting's principal's belief that there would be no coverage, under the Sentinel policy, because Moreno was an employee of the N.F.

---

[10] It is these additional facts that distinguish this case from the "mom and pop hardware store" scenario discussed in Moreno's reply brief. In that scenario, if a customer is injured upon falling in the hardware store and sues the business for negligence, the "mom and pop" insureds' prompt forwarding of the lawsuit papers (served upon them) to the insurer ordinarily would, without more, trigger the insurer's duty of defense.

Painting.[11]  Furthermore, though the letter includes the word "Defense," it is apparent that the main focus of the letter was the scope of coverage, particularly given Katchmir's awareness of N.F. Painting's continued engagement of Attorney Lopez, and the absence of any mention of an express written or verbal request for defense  by N.F. Painting. Thus, as the district court correctly concluded, the July 5, 2017 letter simply communicated Sentinel's agreement with N.F. Painting's own "no coverage" determination and confirmed that defense and indemnity would not be provided. Notably, however, it does not confirm that a defense and/or indemnity ever were sought.

Finally, any possible uncertainty regarding Sentinel's understanding of N.F. Painting's intentions relative to its defense disappears when N.F. Painting's handling of Moreno's October 23, 2018 amended petition, asserting independent contractor status for the first time, and the May 17, 2019 "Proposed Agreed Judgment" that Moreno and N.F. Painting submitted to the state court, are considered.  Specifically, there is no evidence that N.F. Painting, despite having had the benefit of legal counsel throughout the duration of the litigation with Moreno, ever contacted Sentinel to discuss the possibility that either of these events would impact Sentinel's and/or N.F. Painting's earlier assessments of the policy's coverage.  Indeed, N.F. Painting never even informed Sentinel that the amended petition had been filed or, later, that an Agreed Judgment, obligating N.F. Painting to pay approximately $1.6 million in damages to Moreno, was even under consideration, much less submitted to the court for entry. And N.F. Painting  certainly never satisfied its "delivery of suit documents" obligation relative to these pleadings.  These omissions are

---

[11] Moreno points to no evidence in the summary judgment record disputing Katchmir's accounts of these telephone conversations.

particularly telling given Sentinel's express directive, in Katchmir's July 5 letter, to forward "any new allegations or additional information that you feel might alter [Sentinel's coverage determination] to [Sentinel] for consideration, and to contact Katchmir "should you have any questions about this matter or the contents of this letter."

In short, the undisputed facts before us show that N.F. Painting chose, with the assistance of counsel, to handle Moreno's personal injury claims in its own way, without involving Sentinel in its defense, as it was entitled to do. And Moreno has put forth no evidence suggesting that Sentinel was not entitled to rely on that decision. Having made that decision, it is N.F. Painting, and thus Moreno, as third-party beneficiary, *not* Sentinel, who must bear responsibility for any resulting adverse consequences.  In other words, the law will not permit a third-party beneficiary to simply disregard an insured's litigation decisions, *i.e.*, essentially re-write history, merely because he has no other means of satisfying his judgment against the insured. Thus, because no defense ever was sought, it was not owed.

## B. Prejudice

Moreno additionally maintains that any noncompliance by N.F. Painting relative to the Sentinel policy's notice requirements does not excuse Sentinel's indemnity obligations unless Sentinel shows resulting prejudice. In *Crocker*, the Texas Supreme Court distinguished prejudice requirements for cases where notice to the insurer of service of process was "wholly lacking" (prejudice not required) from cases where such notice to the insurer was merely late (requiring actual prejudice). *See Crocker*, 246 S.W.3d at 609 (distinguishing *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630 (Tex. 2007)).

Here, as the district court correctly concluded, the undisputed summary judgment evidence demonstrates that Sentinel's duty to defend N.F. Painting was never triggered, much less breached, relative to Moreno's

claim, because N.F. Painting *never* requested a defense from Sentinel and Sentinel did not have an obligation to *sua sponte* interject itself into the state court action.  Even so, Sentinel's inability to control N.F. Painting's defense against Moreno's injury claim, together with N.F. Painting's agreement to entry of judgment against it in the amount of approximately $1.6 million (without any prior notice to Sentinel), constitute prejudice as a matter of law. *See Crocker*, 246 S.W.3d at 609 ("National Union was obviously prejudiced in the sense that it was exposed to a $1 million judgment"); *Hudson*, 392 S.W.3d at 727-28 & n.11 (despite insurer's actual knowledge of the suit against the insured, rendition of $3.5 million default judgment constituted prejudice as a matter of law); *Hoel v. Old American Cty. Mut. Fire Ins. Co.,* No. 01-16-00610-CV, 2017 WL 3911020,*5 (Tex.App-Hous. [1st Dist.] Sept. 7, 2017) (despite actual knowledge that insured had been sued, insurers were prejudiced as a matter of law by entry of default judgment and being deprived of the right to answer, defend, conduct discovery and fully litigate the merits of the claims asserted against the insured).

## V.

For the reasons stated herein, the judgment of the district court dismissing Moreno's claims against Sentinel with prejudice is AFFIRMED.